# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Julia Surbaugh,**
**Petitioner Below, Petitioner**

**vs.) No. 19-0739** (Webster County 17-P-22)

**J.D. Sallaz, Superintendent,**
**Lakin Correctional Center,**
**Respondent Below, Respondent**

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Julia Surbaugh, by counsel Steven B. Nanners and Jared S. Frame, appeals the August 14, 2019, order of the Circuit Court of Webster County denying her petition for a writ of habeas corpus. Respondent J.D. Sallaz, Superintendent, Lakin Correctional Center, by counsel Gordon L. Mowen, II, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2010, petitioner was indicted in the Circuit Court of Webster County for the murder of her husband, Michael Surbaugh, who was having an extramarital affair. Following petitioner's conviction by a jury for first-degree murder, the circuit court sentenced petitioner to a life term of incarceration without the possibility of parole. In *State v. Surbaugh* ("*Surbaugh I*"), 230 W. Va. 212, 737 S.E.2d 240 (2012), this Court reversed petitioner's conviction, ruling that "[u]pon retrial, . . . petitioner is entitled to an instruction on good character, if such evidence is introduced." *Id.* at 229, 737 S.E.2d at 257. After a second trial, a jury found petitioner guilty of first-degree murder, and she was sentenced to a life term of incarceration without the possibility of parole. This Court

1

affirmed petitioner's conviction following the second trial in *State v. Surbaugh* ("*Surbaugh II*"), 237 W. Va. 242, 786 S.E.2d 601, *cert. denied*, __ U.S. __, 137 S.Ct. 448, 196 L.Ed.2d 331 (2016).

On October 31, 2017, petitioner filed a petition for a writ of habeas corpus in the circuit court. The circuit court appointed habeas counsel to represent petitioner. Petitioner filed a supplemental habeas petition on January 2, 2019. At a March 19, 2019, omnibus hearing, the circuit court dismissed twenty-one of petitioner's thirty-five asserted grounds for relief, finding that those issues were adjudicated in petitioner's criminal proceedings or on appeal in either *Surbaugh I* or *Surbaugh II*. The circuit court dismissed one additional ground because petitioner voluntarily withdrew it. Petitioner subsequently testified in support of the remaining grounds for relief.[1] Respondent presented the testimony of the attorney who represented petitioner at her second trial and the attorney who represented petitioner on appeal in *Surbaugh II*.[2] By order entered on August 14, 2019, the circuit court noted that the majority of petitioner's claims had been dismissed and that it would address the remaining thirteen grounds including those involving alleged ineffective assistance of trial counsel and of appellate counsel in *Surbaugh II*. In its August 14, 2019, order, the circuit court found that none of the remaining grounds entitled petitioner to habeas relief and denied the petition.

Petitioner now appeals. This Court reviews a circuit court order denying a petition for a writ of habeas corpus under the following standard:

"In reviewing challenges to the findings and conclusions of the circuit court

---

[1]At the end of petitioner's testimony on direct examination, she testified that she would like for the circuit court to hold the record open because she intended to, with her own funds, have a computer simulation produced of her husband's shooting based on the testimony of Professor Andrew Wheeler, her expert on blood splatter evidence. On appeal, petitioner argues that the circuit court never ruled on her request to leave the record open. We find that petitioner's request was precluded by the circuit court's dismissal of those claims that were adjudicated in *State v. Surbaugh* ("*Surbaugh II*"), 237 W. Va. 242, 786 S.E.2d 601, *cert. denied*, __ U.S. __, 137 S.Ct. 448, 196 L.Ed2d 331 (2016), because, in *Surbaugh II*, this Court rejected the argument that the evidence was insufficient to convict petitioner of first-degree murder based on Professor Wheeler's testimony at petitioner's second trial. *Id.* at 259, 786 S.E.2d at 618.

[2]On June 16, 2020, petitioner filed a motion to supplement the appellate record with phone logs from the CenturyLink Inmate Communication System to contradict the testimony of her appellate attorney in *State v. Surbaugh* ("*Surbaugh II*"), 237 W. Va. 242, 786 S.E.2d 601, *cert. denied*, __ U.S. __, 137 S.Ct. 448, 196 L.Ed2d 331 (2016), who stated he had telephone communications with petitioner at her correctional facility. The circuit court found that, during the attorney's testimony, he admitted to at least one "oversight or error" during his representation of petitioner on appeal by failing to timely send to petitioner a copy of the opening brief in *Surbaugh II*. The circuit court further found that, to the extent that there were deficiencies in the attorney's representation of petitioner, those deficiencies did not prejudice petitioner. As discussed below, we adopt this and the other findings of the circuit court. Therefore, we deny petitioner's motion to supplement the appellate record as the proffered logs would not change our decision.

in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016). "Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. Pt. 1, *State ex rel. Postelwaite v. Bechtold*, 158 W. Va. 479, 212 S.E.2d 69 (1975). Furthermore, "[o]n an appeal to this Court[,] the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which [she] complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 1, *White v. Haines*, 215 W. Va. 698, 601 S.E.2d 18 (2004) (quoting Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973)).

On appeal, petitioner raises a single generic assignment of error: that the circuit court erred in denying her petition for a writ of habeas corpus. Respondent counters that the circuit court properly denied the petition. We agree with respondent. Having reviewed the circuit court's August 14, 2019, "Order," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions, which we find address petitioner's assignment of error. The Clerk is directed to attach a copy of the August 14, 2019, order to this memorandum decision. Accordingly, we conclude that the circuit court did not abuse its discretion in denying the habeas petition.

For the foregoing reasons, we affirm the circuit court's August 14, 2019, order denying the instant petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** September 23, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

3

## IN THE CIRCUIT COURT OF WEBSTER COUNTY, WEST VIRGINIA

**JULIA SURBAUGH,**
      **Petitioner,**

v.                                         **Case No. 17-P-22**
                                     **Judge Richard A. Facemire**

**ANNE THOMAS, Warden,**
      **Respondent.**

## ORDER

    October 31, 2017, the Petitioner, Julia Surbaugh, acting *pro se*, filed her Petition for Writ of Habeas Corpus. The Petition contained 35 grounds. Thereafter, the Court appointed Steve Nanners and Jared Frame to represent the Petitioner in these proceedings. January 2, 2019, the Petitioner filed her Addendum/ Supplement to Habeas Corpus Petition. The Addendum contained additional argument regarding Grounds 7, 18, 26, and 30 in her original Petition, as well as a copy of an exhibit Petitioner filed with the Office of Disciplinary Counsel, in conjunction with an ethics complaint she filed against her appellate counsel, Christopher Moffatt. The Respondent, through counsel, Webster County Prosecuting Attorney, Dwayne Vandevender, filed the Answer to Petition for Habeas Corpus Relief on February 19, 2019. On March 19, 2019, all counsel, and the Petitioner appeared for an evidentiary hearing on the Petition. The Court heard the testimony of the Petitioner, Petitioner's trial counsel, Dan Hardway, and Petitioner's appellate counsel, Christopher Moffatt. At the conclusion of the hearing, the Court ordered counsel to submit proposed findings of fact and conclusions of law for the Court's consideration. The Petitioner filed her proposed order May 14, 2019, and the Respondent's proposed order was filed April 25, 2019. The Court, after considering the pleadings and record in this case, shall DENY the Petition for Writ of Habeas Corpus. The Court makes the following findings of fact and conclusions of law:

000130

1. The Petitioner, Julia Surbaugh, was indicted for *Murder in the First Degree* in the underlying case *State v. Julia Surbaugh*, Webster County Case No. 10-F-14. The murder occurring on August 6, 2009, and the victim being the Petitioner's husband, Michael Surbaugh. Following a jury trial, the Petitioner was found guilty with no recommendation of mercy. The Petitioner appealed her conviction to the W.Va. Supreme Court of Appeals, which reversed the Petitioner's conviction. *State v. Surbaugh*, 737 S.E.2d 240 (W.Va. 2012) (*Surbaugh I*). The Petitioner's conviction was reversed on the sole issue of the Court's failure to provide a character instruction to the jury. This Court's rulings, including those rulings regarding the admissibility of the Petitioner's statements were upheld by the W.Va. Supreme Court.

2. Upon re-trial, (the second trial having been moved to the Circuit Court of Braxton County), the Petitioner was again found guilty of *Murder in the First Degree*, and the jury made no recommendation of mercy. The Petitioner was represented at trial by Dan Hardway, who Petitioner retained.

3. The Petitioner again appealed her conviction to the W.Va. Supreme Court. Petitioner was represented in her appeal by appointed counsel, Christopher Moffatt. Mr. Moffatt filed a Brief on her behalf (filed with the W.Va. Supreme Court January 6, 2015). He raised the following assignments of error: (1) Circuit Court erred by denying Petitioner's Motion for Judgment of Acquittal where State failed to prove the corpus delicti of the crime; (2) Circuit Court erred by denying Petitioner's Motion in Limine to limit the testimony of Dr. Hamada Mahmoud (Medical Examiner) under *Daubert*; (3) Circuit Court erred by denying Petitioner's Motion in Limine to prohibit testimony of experts on the basis of possibility; (4) Circuit Court erred by denying Petitioner's

000131

Motion to Dismiss based upon destruction of evidence by the State; (5) Circuit Court erred by denying Petitioner's Motion for Judgment of Acquittal where insufficient evidence supported the jury's verdict and where the jury improperly resolved evidentiary conflicts in regard to the victim's location when shot; (6) Circuit Court erred in denying Petitioner's Jury Instruction No. 7; (7) Denying Jury Instruction No. 8; (8) Denying Jury Instruction No. 5; (9) Denying Petitioner's Verdict Form; and (10) Circuit Court erred by admitting Petitioner's statements.

4. Petitioner alleges that Mr. Moffatt did not provide her with a copy of the Petitioner's Brief that he filed on her behalf. Petitioner alleges she had to file a complaint with the Office of Disciplinary Counsel (Complaint No. 15-06-128) in order to obtain a copy. April 30, 2015, the Petitioner, acting on her own behalf filed with the W.Va. Supreme Court her Supplement to the Petitioner's Brief, containing arguments that were not included in Mr. Moffatt's Brief. In her Supplement, the Petitioner made arguments regarding the following: (1) Blood spatter analysis; (2) New evidence regarding the statement of Michael Surbaugh; (3) Rebuttal testimony of Deputy Clayton; (4) Dr. Hamada Mahmoud's being allowed to testify to a possibility of the mechanism of death; (5) The Petitioner not being permitted to cross-examine two witnesses as to their financial outcome in the trial; (6) Pattern of misconduct by the State; and (7) Issues regarding the Webster County Memorial Hospital's treatment of Michael Surbaugh. May 27, 2015, the Petitioner filed an additional letter with the W.Va. Supreme Court. The W.Va. Supreme Court upheld the Petitioner's conviction upon retrial in *State v. Surbaugh*, 786 S.E.2d 601 (W.Va. 2016) (*Surbaugh II*).

000132

5. In her Petition for Writ of Habeas Corpus, the Petitioner alleges 35 separate grounds. At the March 19, 2019, evidentiary hearing, the Court dismissed the following grounds: 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 20, 22, 23, 26, 27, 28, 33, and 34. The Petitioner voluntarily withdrew ground 17. The Court dismissed these grounds at the hearing, finding that these matters were all previously adjudicated at the trial and on appeal, and therefore not eligible for consideration in a habeas petition pursuant to W.Va. Code § 53-4A-1. The grounds not dismissed by the Court included those which alleged ineffective assistance by trial counsel and appellate counsel.

6. "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence has two components. First, the defendant must show counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984).

7. The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

000133

professional assistance. These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. *Strickland*, 2064-2067.

8. With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. *Strickland*, 2067-2069.

9. **Ground One:** Petitioner alleges that the Court has not provided her with access to all of the trial exhibits and records necessary to prepare her Petition. The Court appointed two attorneys (Steve Nanners and Jared Frame) to represent the Petitioner in her habeas case. Counsel have been free to review the records held by the Circuit Clerk in the underlying case. Further, the Court afforded the Petitioner and her counsel the opportunity to file an amended petition for habeas corpus, to include any grounds that may not have been included in the Petitioner's initial *pro se* Petition. Petitioner's counsel had the opportunity to review any additional records that the Petitioner claims she was not able to review. The Court finds that Ground One is without merit and shall be dismissed.

10. **Ground Two:** Petitioner alleges that she was denied the ability to participate in the perfection of her direct appeal by the refusal of her appellate counsel to communicate with her.

000134

11. Petitioner alleges that Mr. Moffatt did not have the requisite scientific knowledge to properly prepare and argue the issues in her case regarding blood spatter. She further alleges there was a breakdown in communications between herself and Mr. Moffatt, and that the appeal he filed on her behalf did not contain adequate citations.

12. With respect to Petitioner's claim that Mr. Moffatt did not have sufficient scientific knowledge—a defendant does not get to choose her appointed counsel. Mr. Moffatt obtained his license to practice law in West Virginia in 1987. He has tried multiple cases before a jury and has appealed multiple cases to the W.Va. Supreme Court. He is one of the most experienced attorneys available for appointed cases in Webster County.

13. The appeal Mr. Moffatt filed on behalf of the Petitioner contained ten different assignments of error. Mr. Moffatt raised the issues regarding the testimony of Dr. Hamada Mahmoud.

14. Mr. Moffatt testified at the evidentiary hearing that he believed, and his client agreed, that the strongest issue on appeal was the issue of Michael Surbaugh's death being caused not by any wound inflicted upon him by the Petitioner, but by alleged errors made by medical personnel. Mr. Moffatt testified that he did not believe the blood spatter arguments were the strongest arguments for the Petitioner, but he noted that at the argument before the W.Va. Supreme Court, one of the Justices did reference the blood spatter issue.

15. Deciding which issues to emphasize is a strategy decision on the part of counsel.

16. Regarding Mr. Moffatt's communication with the Petitioner—Mr. Moffatt testified that he had numerous communications with the Petitioner through meetings, telephone calls and correspondence.

000135

17. Respondent's Exhibit #2, admitted at the evidentiary hearing, is a thank you card sent from the Petitioner to Mr. Moffatt following the oral argument before the W.Va. Supreme Court indicating that she believed that Mr. Moffatt did his best on the appeal.

18. The Petitioner filed an ethics complaint against Mr. Moffatt during the pendency of the second appeal. This complaint was ultimately dismissed. The ethics complaint was filed in part due to Mr. Moffatt's failure to provide the Petitioner with a copy of appellate brief. Mr. Moffatt testified that the failure to provide a copy of the appellate brief was an oversight or error on his part. However, Mr. Moffatt testified that before filing, he understood her position on the appeal, and believed that what he contained within the brief was what she wanted. He further stated that the Petitioner knew what he would be arguing in the brief.

19. Following the filing of the ethics complaint, and during the pendency of the appeal, Mr. Moffatt filed a Motion to Withdraw, which the W.Va. Supreme Court denied.

20. The Court notes that on or about May 28, 2019, the Petitioner filed a subsequent ethics complaint against Mr. Moffatt, alleging that he misrepresented facts in his March 19, 2019, testimony.

21. Mr. Moffatt testified at the hearing that the Petitioner apologized to him for filing the first ethics complaint, and told him that she had filed it because, if she lost her second appeal, the ethics complaint was her only hope.

22. The appellate record reflects that the Petitioner was fully aware of the proceedings and the pleadings filed, and, in fact, supplemented the record on appeal with her own pleadings.

006136

23. The evidence does not support the Petitioner's claim of ineffective assistance of counsel for failure to communicate with her during the second appeal. The Court finds that Ground Two is without merit and shall be dismissed.

24. **Ground Three:** The Petitioner alleges certain bias by the Circuit Court. August 5, 2009, Michael Surbaugh was charged in a misdemeanor criminal complaint in Webster County, with having a firearm on school property. This criminal complaint was not initially disclosed to the Petitioner and her trial counsel. At the February 12, 2014, pre-trial the Court found that the criminal complaint should have been disclosed to the Petitioner and her trial counsel sooner, but that since it was being disclosed prior to the trial, that there was harm to the Petitioner. The Petitioner later sought to have the Court removed from the case, alleging in part that the Court showed bias in favor of the Prosecuting Attorney by not filing a complaint against the Prosecuting Attorney for failing to timely disclose the criminal complaint against Michael Surbaugh.

25. Again, as the Court ruled previously, the State should have disclosed the criminal complaint sooner. However, the Court previously found, and again finds, that there was not a breach of ethical duty on the part of the Prosecuting Attorney. The Petitioner had the criminal complaint prior to her second jury trial, so there was no harm or prejudice to the Petitioner with respect to her ability to be able to prepare for trial.

26. Throughout the long history of these proceedings, the W.Va. Supreme Court has denied all attempts by the Petitioner to have this Court recused from this matter.

27. The Petitioner alleges that the Court referred to the Prosecuting Attorney as "our Prosecutor" before the jury. The Prosecuting Attorney is an elected official, and the Court does not believe its conduct was improper, nor was it a sign of bias in favor of

000137

the Prosecuting Attorney over the defense attorney. Further, there is no evidence that these comments made during a trial spanning many days had any bearing on the decision of the jury.

28. Petitioner alleges that it was improper to leave her at a DOC facility for a period of time following the reversal of her first trial, and while she was awaiting her second trial. There is no evidence that this effected the outcome of the second jury trial. The Court finds there is no merit to Ground Three, and it shall be dismissed.

29. **Ground Seven:** The Petitioner alleges that at the second trial, the State knowingly used the perjured testimony of Webster County Deputy Richard Clayton and Deputy David Vandevender.

30. Petitioner bases the allegation of perjured testimony upon her interpretation of the facts presented—that is the testimony of Deputy Clayton at this first trial versus the second trial. She also argues that her trial counsel, Dan Hardway, should have pursued this on cross-examination in the second trial, and was ineffective regarding this issue.

31. Mr. Hardway testified at the March 19, 2019, hearing that prior to the second trial he reviewed all of Deputy Clayton's previous testimony. He further testified that he did not recall the Petitioner asking him to object or pursue a specific line of questioning during Deputy Clayton's testimony.

32. Mr. Hardway has been licensed to practice law in West Virginia since 1981, has tried multiple cases before the jury, and has previously tried murder cases. Mr. Hardway testified that at different times throughout the second trial, that the Petitioner would ask him to object, and he would often ignore those requests—no doubt relying on his own knowledge and experience as to when it is appropriate and most advantageous to object.

000138

The fact that Mr. Hardway did not cross-examine Deputy Clayton in the same manner as her counsel in her first trial (Dan James), does not demonstrate ineffective assistance by Mr. Hardway.

33. Petitioner also notes that Deputy Clayton acknowledged that his testimony before the Grand Jury was not correct and that both deputies testified contrary to their police reports. The Court does not believe that these inconsistencies and/or errors, which were raised by Petitioner's counsel during the second trial, can be characterized as perjury. The distinction between Deputy Clayton's testimony at the first trial versus his testimony at the second trial likewise cannot be characterized as perjury.

34. Both juries heard the testimony of Deputy Clayton and the cross-examination of him, and resolved those factual issues.

35. Furthermore, the W.Va. Supreme Court has twice found that the statements made by the Petitioner were admissible at trial. Therefore, the effect of the statements/testimony of Deputy Clayton and Deputy Vandevender on the admissibility of the statements of the Petitioner has already been resolved. The Court finds that Ground Seven is without merit, and it shall be dismissed.

36. **Ground Nineteen:** Petitioner alleges ineffective assistance of appellate counsel, arguing that Mr. Moffatt failed to present on appeal issues regarding the opinion of Dr. Spitz. The Petitioner did not demonstrate how further argument on this issue before the W.Va. Supreme Court would have changed the result in this case. Further, the issues regarding the cause of death were fully litigated at the trial and appeal. Ground Nineteen shall be dismissed.

000139

37. **Ground Twenty-One:** Petitioner alleges Mr. Moffat was ineffective by not providing certain transcripts or records with his appeal that would have corrected factual errors by the W.Va. Supreme Court in *Surbaugh II*. These alleged errors by the W.Va. Supreme Court involve matters that have been adjudicated. Mr. Moffatt testified that he believed the W.Va. Supreme Court had all that it needed before it to properly consider the case and make a decision. Ground Twenty-One shall be dismissed.

38. **Ground Twenty-Four and Ground Twenty-Nine:** The Petitioner alleges that at the second trial, the Prosecuting Attorney, presented false rebuttal testimony by Deputy Clayton. Again, the Petitioner's allegation is based on her interpretation of the facts presented. The jury heard the testimony of Deputy Clayton and the Petitioner, and the cross-examination by counsel, and resolved those factual issues. The Court shall dismiss Grounds Twenty-Four and Twenty-Nine.

39. **Ground Twenty-Five:** The Petitioner raises issues regarding Joe Morton's criminal conviction subsequent to the second trial. Joe Morton was the husband of Janet Morton, who was the mistress/girlfriend of Michael Surbaugh. Petitioner asserts that this may affect the credibility of Janet Morton. This ground is purely speculative, and the Court believes has no bearing on the central issues of this case. Ground Twenty-Five shall be dismissed.

40. **Ground Thirty:** Petitioner alleges ineffective assistance by her trial counsel, Dan Hardway, for failing to object and impeach Deputy Clayton, for failing to assist her during her testimony and provide her with a requested transcript, and for not questioning Dr. Hamada Mahmoud's credentials. She further argues that Mr. Hardway should have called Jerry Hamrick as a character witness, and to testify regarding the

Page 11 of 17

000140

destruction of the bed sheets following the first trial. She argues that counsel should have made different arguments regarding the admissibility of her statements, that Mr. Hardway should've objected to the removal of Beverly Moore as a juror, and that Mr. Hardway should have objected to State's Exhibit #95, which was Andrew Wheeler's graphic showing the Petitioner holding the gun, and that trial counsel should've objected to other questions directed to Andrew Wheeler. She further argues that trial counsel failed to emphasize that the blood found on the ceiling was so far from the mattress that Michael Surbaugh could not have been lying down (as he said he was).

41. As noted above, Mr. Hardway has considerable legal experience, and decisions to object or pursue certain lines of questioning, are often strategy decisions. Mr. Hardway testified that he believed he cross-examined Deputy Clayton effectively. He further testified that he believed all of the relevant issues regarding Dr. Mahmoud's background and employment were raised during cross-examination, and further that he had a concern about Dr. Mahmoud's testimony going on too long, and thereby losing the attention of the jury. Again, this a matter of the attorney's judgment and a strategy decision.

42. The Petitioner's testimony during the course of the second trial spanned two days. Mr. Hardway testified that he believed it would've been an ethical violation to discuss the Petitioner's testimony with her during the evening following her first day of testimony and before the second day of her testimony. Mr. Hardway testified that on the second day of her testimony he wanted her to be unequivocally able to say that she had not been coached regarding her answers, and further the Court had instructed the Petitioner not to discuss her testimony.

43. Petitioner alleges Mr. Hardway failed to provide her with a specific portion of the prior trial's transcript. Mr. Hardway says he does not recall that incident.

44. Mr. Hardway testified that he did not call Jerry Hamrick as a witness, because after interviewing Mr. Hamrick, he believed that Mr. Hamrick would not be a favorable character witness.

45. The issue regarding the destroyed bed sheets was heard and resolved by the W.Va. Supreme Court in *Surbaugh II*.

46. Mr. Hardway testified that he did not believe he had a basis to object to Andrew Wheeler's exhibit, as Andrew Wheeler was his expert witness.

47. With respect to Juror Beverly Moore, it appears that Mr. Hardway did object to the removal of Juror Moore, as the Petitioner believes he should have (Pg. 128 Second Trial Transcript).

48. Again, with respect to the admissibility of the Petitioner's statements, the W.Va. Supreme Court found the statements to be admissible in *Surbaugh I and Surbaugh II*.

49. The Court must look at Mr. Hardway's decisions to ask certain questions or not object to other questions or answers with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." The Court cannot look at Mr. Hardway's conduct throughout this case, and conclude that it was ineffective. In fact, the Court's observation of Mr. Hardway throughout the second jury trial, was that he was well-prepared throughout, had a command of the facts and complexities of the case, and provided a vigorous defense for the Petitioner. The Court finds that Ground Thirty is without merit, and it shall be dismissed.

000142

50. **Ground Thirty-One:** The Petitioner alleges that the medical examiner, Dr. Mahmoud was permitted to testify as to the law. The Petitioner cites to Page 903 of Second Trial Transcript. Dr. Mahmoud testified that if a person suffers a gunshot wound, but later receives poor medical treatment at the hospital, that it is still ultimately the gunshot wound that put the person in the hospital and caused his death. The Court does not believe that Dr. Mahmoud was testifying to the law. The W.Va. Supreme Court found in *Surbaugh II*, "The circuit court instructed the jury that it should find the petitioner not guilty if there was reasonable doubt about whether the gunshot wounds inflicted by the petitioner caused the death. The jury was the trier of fact. It heard extensive evidence from both fact and expert witnesses regarding the circumstances and cause of death. We have no basis to second-guess the jury's decision of guilt." *Id.* at 616.

51. Furthermore, in Syl. Pt. 9 of *Surbaugh II*, the W.Va. Supreme Court found, "If a person inflicts a wound upon a person who thereafter dies, it is not a defense to a criminal homicide charge that medical care in the treatment of that wound contributed to the victim's death. Only medical care that is shown to be the sole cause of death will operate to break the chain of causation and relieve the defendant of criminal responsibility." The Court shall dismiss Ground Thirty-One.

52. **Ground Thirty-Two:** The Petitioner argues that Dr. Mahmoud provided statistics without reference, which therefore could not be substantiated and misled the jury. Dr. Mahmoud testified that 99.9 % of gunshot wounds to the head are fatal (Pg. 850 of Second Trial Transcript). This statement was not misleading to the jury, and the Court does not believe that this statement alone would have swayed the jury. Furthermore, this statement would have no bearing on the Petitioner's argument that she acted in

000143

self-defense. Again, the W.Va. Supreme Court found that the Court properly instructed the jury regarding cause of death. The Court finds there is no merit to Ground Thirty-Two, and it shall be dismissed.

53. **Ground Thirty-Five:** The Petitioner alleges that there is new evidence that could have explained Michael Surbaugh's behavior. She alleges that Michael Surbaugh's behavior could possibly by explained by chronic traumatic encephalopathy (CTE). She alleges that he played football in high school, and played one year of college football. She states that he also wrestled in high school and in college. She asserts that CTE may explain his thirty years of alcoholism, as well as what she alleges was his lie when he stated before he died that he was lying in bed when he was shot.

54. This ground is purely speculative. She offers zero evidence that Michael Surbaugh actually suffered from CTE—only that he played sports as a student. None of the experts who have testified in these proceedings have presented any evidence whatsoever regarding Michael Surbaugh's having CTE.

55. The Petitioner presented extensive evidence of Michael Surbaugh's aggressive behavior at both trials, and she presented her evidence of self-defense. The jury concluded that the Petitioner was not defending herself. The Court notes that there was no evidence presented that Michael Surbaugh was ever physically abusive to the Petitioner. Ground Thirty-Five shall be dismissed.

56. The Petitioner's case was heard by two separate juries—the first in Webster County and the second in Braxton County. Dan James and Dan Hardway, her trial counsel in her respective trials, presented her case to the juries in different ways (Mr. Hardway emphasizing the medical neglect issue), and yet both juries reached the same verdict of

000144

guilty without a recommendation of mercy. Both juries heard the Petitioner's arguments and evidence that her actions were in self-defense and that Michael Surbaugh self-inflicted one of the gunshots, and both juries reached the same conclusion about those arguments.

57. The Petitioner's case was heard by the W.Va. Supreme Court twice, and the only issue that the W.Va. Supreme Court saw as grounds for a reversal, was the Court's failure in the first trial to provide a character instruction to the jury. The W.Va. Supreme Court has upheld all of the evidentiary rulings in the Petitioner's case, as well as any issues surrounding the expert witnesses. While the Petitioner may have had a strained relationship with her appellate counsel, the W.Va. Supreme Court did not find it necessary to remove him from the second appeal, as evidenced by the denial of his Motion to Withdraw. Both the Petitioner's trial counsel and appellate counsel effectively represented her, and the Petitioner has failed to demonstrate that any errors or omissions on their part were enough to alter the outcome of the case.

58. The Petitioner has not met her burden, and has not shown that there is a reasonable probability that but for the errors of counsel, that the verdict of the jury and of the W.Va. Supreme Court would have been different.

Therefore, it is hereby ORDERED, ADJUDGED, and DECREED:

1. The Petition for Writ of Habeas Corpus shall be DENIED. The Petitioner's conviction and sentence in case 10-F-14 shall remain in full force and effect.

2. Case 17-P-22 shall be DISMISSED and stricken from the Court's docket.

3. The Court shall note and preserve all parties' objections and exceptions to the Court's rulings.

000145

4. This is a FINAL ORDER, and any party aggrieved by the Court's ruling may file a petition for appeal with the W.Va. Supreme Court of Appeals.

5. Counsel for the Petitioner, Steve Nanners and Jared Frame, shall remain as counsel for the Petitioner for the purposes of filing an appeal.

6. The Clerk of this Court shall provide a copy of this Order to Steve Nanners, Jared Frame, Dwayne Vandevender, and to Julia Surbaugh at the Lakin Correctional Center.

It is accordingly so ORDERED.

ENTERED this the _____14th_____ day of ___August_____ ,2019.

Entered: _14 Aug 2019_

Richard A. Facemire, Judge   8/14/19